Moss, Respondent, vs. WARNS and wife, Appellants.

*September 14—October 10, 1944.*

For the appellants there was a brief by *Bitker & Puchner* of Milwaukee, and oral argument by *Irving A. Puchner*.

*Alfred Kay* of Milwaukee, for the respondent.

FRITZ, J.   The defendants', Melvin Owen Warns' and his wife Rose Anna Warns', first contention on this appeal is that no enforceable listing contract engaging plaintiff's services as a broker to sell their residence property was ever entered into by them.   It is undisputed that at a conference between the parties at defendants' residence the question of their selling the property and engaging plaintiff to procure a purchaser was discussed for several hours, and finally culminated in plaintiff's preparing and signing in duplicate the listing agreement, dated November 14, 1942, which is involved in this action; that plaintiff then and there presented the duplicates to defendants for execution and both were signed by Melvin O. Warns; that his wife signed one of the duplicates, but not the other; that they were left lying on the table during

some further discussion, after which plaintiff in the presence of defendants and without any objection on their part took and departed with the duplicate which all of the parties had signed. On November 15, 1942, plaintiff brought Louis Metch and his wife, as prospective purchasers, to defendants' residence for an inspection thereof, and in the presence and without any objection on the part of either of the defendants, the property was shown to the Metchs by plaintiff with the assistance and co-operation of Mr. Warns. On November 17, 1942, a written offer prepared by plaintiff for the purchase of the property was signed by Mr. Metch and given to plaintiff, together with an earnest-money deposit of $250. Upon plaintiff's promptly informing Mr. Warns that he had obtained Metch's signed offer and earnest-money deposit, Warns refused to consider the offer, without stating any ground for his rejection thereof, excepting his reply, "We decided not to sell.. Mrs. Warns would not consent to it." However, in subsequently answering plaintiff's complaint in this action defendants denied the execution and delivery by them of the listing agreement; and on the trial, as well as their appeals, defendants claimed they never intended the agreement to be effective and there was but a conditional delivery. These claims are based by defendants upon matters as to which there are conflicts in the evidence and inferences which can be drawn therefrom. However, a review of the record discloses that the civil and circuit courts were warranted in finding and concluding that one of the duplicates of the listing agreement, dated November 14, 1942, was signed on that date by both defendants, as well as the plaintiff, and was then, with the knowledge of defendants and without their making any objection thereto, taken and retained by plaintiff, and was an executed and delivered contract. True, there is, on the one hand, testimony by Mr. Warns that,—

"We both decided that we wanted to rent it, but after as long as a three-hour discussion . . . Mr. Moss just high-

pressured,—you might say is a broad word,—into selling the place, and I said, 'Well, I am signing this only on the condition with Mrs. Warns' approval.' "

However, on the other hand, there is the undisputed proof that the duplicate retained by plaintiff was signed voluntarily by Mrs. Warns; and in neither of the duplicates is there any provision that it was not to be effective as a contract until both of the duplicates were signed. There is on each instrument, below the place intended for the last of the signatures of the parties, merely the notation in parentheses "(Executed in duplicate)." And furthermore, there are the significant, undisputed facts that defendants, after their acquiescence in plaintiff's retention of the completely signed duplicate of the agreement, also allowed plaintiff to bring the Metchs, as prospective purchasers, to examine the property; that Mr. Warns did all he could to interest them as buyers; that, although Mrs. Warns was present during these proceedings, she did not make any objection to the attempted sale, but rather indicated a desire to sell by interjecting the opinion that the property was easy to heat; and that it was not until plaintiff informed Warns that Metch had signed a written offer to buy and made a down payment that Warns refused to go through with the deal because his wife refused to join in the sale. In the absence from the agreement of any provision expressly requiring the execution thereof in duplicate in order to render the agreement binding and effective as a valid contract, there is applicable thereto the rule that—

"A contract which purports to be in duplicate is not made invalid by the fact that one of the duplicates is not signed by all of the parties, if they intend the instrument to take effect, especially if the other instrument is properly signed and delivered." 1 Page, Contracts (Supp.), p. 711, sec. 1175.

It is claimed by defendants as a further defense, since the commencement of this action, that there are discrepancies be-

tween some of the terms of sale specified in the listing agreement and the terms stated in Metch's offer to purchase, and that on this ground the defendants were under no obligation to go on with the deal or to pay commission to plaintiff. In relation to that defense it is plaintiff's contention that, even if there were any such discrepancy, the right to assert that as a ground for defendants' refusal to perform those obligations was waived by defendants' failure to base their refusal on that ground when Warns, in refusing to consider Metch's offer, upon being informed thereof by plaintiff, stated, as the reason for his refusal, solely that "We decided not to sell. Mrs. Warns would not consent to it." In support of this contention plaintiff relies upon the rule that—

"Regardless of whether the principal, at the time of his refusal to consummate the transaction, states some grounds or no grounds for such refusal, a particular ground not specified by him at that time is waived and cannot be urged by him when sued for a commission. . . ." 12 C. J. S. p. 224, sec. 95.

That rule has been applied and followed in *Sherwood v. Rosenstein*, 179 Minn. 42, 228 N. W. 339; *Braniff v. Baier*, 101 Kan. 117, 165 Pac. 816, L. R. A. 1917 E, 1036; *Maksoodian v. Keller*, 243 Mass. 249, 137 N. E. 263; *Russell v. Ramm*, 200 Cal. 348, 254 Pac. 532; *Crow v. Casady*, 191 Iowa, 1357, 182 N. W. 884; *Morgan v. Whatley & Whatley*, 205 Ala. 170, 87 So. 846; *Rubin v. Hodes*, 84 Ind. App. 578, 150 N. E. 798.

However, in connection with the rule as quoted above, there is added the qualifying clause, "unless, at the time of refusal, he is without knowledge of the facts giving rise to that ground;" and the only case cited thereto is *Gulart v. Azevedo*, 62 Cal. App. 108, 114, 216 Pac. 405. Defendants herein also cite and rely upon that case. However, the opinion therein neither admits of a qualification in the terms quoted

above, nor is the reason given in the opinion for the exception, which is stated therein, applicable in the case at bar. The reason stated is that,—

"Defendant did not then have the opportunity to make the objections here relied on, because of plaintiff's incorrect statement that the land had been sold in accordance with the terms of the listing contract."

Thus it is obvious that it was solely because the owner did not have the opportunity,—by reason of the broker's incorrect statement,—to make the objection upon which the owner subsequently sought to rely that the court concluded the rule as to waiver was inapplicable. There can be no such conclusion, however, in the case at bar. The facts do not admit of holding that Warns, when he refused to consider the Metch offer tendered by plaintiff, did not then have the opportunity to ascertain the alleged discrepancies by a mere inspection of the offer, and to object thereto then and there on the ground of the discrepancies upon which defendants subsequently relied as a defense in this action. Consequently, the general rule stated in 12 C. J. S. p. 224, sec. 95, is clearly applicable and controlling herein. It follows, that even if there were discrepancies of such nature as to be substantially at variance with terms in the listing agreement, they must be considered waived because Warns' refusal to consider the offer was based on solely another ground.

*By the Court.*—Judgment affirmed.